IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02614-NYW-TPO

KARL G. FRAGSTEIN,

     Plaintiff,

v.

HAMILTON HOME BUILDERS, LLC,
SUMMIT HOUSING TRANSPORT,
WRIGHT'S MANUFACTURED HOMES, LLC,
ROBERT'S MOBILE HOME SERVICE,
TEXAS ATTORNEY GENERAL,
TEXAS GOVERNOR,
TEXAS SECRETARY OF STATE,
TEXAS DEPARTMENT OF INSURANCE,
TEXAS DEPARTMENT OF HOUSING & COMMUNITY AFFAIRS,
TEXAS MANUFACTURED HOUSING DIVISION,
INTERNATIONAL FIDELITY INS. CO.,
TRAVELERS CAUSAL & SURETY CO. OF AM., and
WESTERN SURETY CO.,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Timothy P. O'Hara, United States Magistrate Judge.**

     This cause is before the Court upon the Defendants' Motions to Dismiss. ECF 42, 43, 63, 70, 79 & 98. All Motions to Dismiss have been fully briefed. The Court finds that oral argument will not materially assist in the Motions' adjudication. Based on the Parties' arguments and having reviewed the relevant portions of the record, the Court recommends that all Defendants' Motions [ECF 42, 43, 63, 70, 79 & 98] be **granted**. Also before this Court are Plaintiff's Motions at ECF 154, 160, 161, 162 & 170, which this Court recommends be **denied as moot**.

## **MOTION BRIEFING**

The pending Motions to Dismiss have been briefed as follows:

*The Business Defendants*

Plaintiff brings suit against the private entity businesses who were involved in the manufacturing, retailing, transportation, and installation of his manufactured home: Hamilton Home Builders, Summit Housing Transport, Wright's Manufactured Homes, and Robert's Mobile Home Service. Two of the named "Business Defendants," Hamilton Home Builders and Wright's Manufactured Homes, have appeared.

(1)     Hamilton Home Builders, LLC ("Hamilton") filed its Motion to Dismiss at ECF 42. Hamilton argues that Plaintiff lacks personal jurisdiction. *Id.* Plaintiff responded at ECF 49, 50, and 56. Hamilton replied at ECF 58. Hamilton also opposed Plaintiff's evidentiary submission at ECF 93, arguing that this Court must resolve the jurisdictional issues first. ECF 109.

(2)     Wright's Manufactured Homes ("Wright") and its surety, Western Surety Co. ("Western Surety"), filed their joint Motion to Dismiss at ECF 98. They argue in a joint motion that the Court lacks personal jurisdiction and the venue is improper. Plaintiff responded at ECF 99. Wright and Western Surety did not reply.

*The Insurance Defendants*

Plaintiff also brings suit against the three insurance companies who acted as sureties for the business Defendants. One such insurance company is Western Surety, noted above. The other two are:

(3)     International Fidelity Insurance Co. ("IFIC") filed its Motion to Dismiss at ECF 63. IFIC argues that Plaintiff's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. ECF 63. Plaintiff responded at ECF 92, and IFIC replied at ECF 95.

(4)     Travelers Casualty and Surety Co. of America ("Travelers") filed its Motion to Dismiss at ECF 70. Travelers argues that the Court lacks personal jurisdiction, the Plaintiff fails to state a Fourteenth Amendment claim and a claim for surety liability. Plaintiff responded at ECF 78. Travelers replied at ECF 83.

*The Texas State Defendants*

The remaining Defendants in this lawsuit are various agencies and officials of Texas state government:

(5)    The Texas Department of Insurance, the Texas Department of Housing and Community Affairs ("TDHCA"), and its Manufactured Housing Division, all agencies of Texas state government, filed their collective Motion to Dismiss at ECF 43. The Texas Agencies argue that the Court lacks personal jurisdiction, the Plaintiff lacks standing, the claims are barred by the Eleventh Amendment, the Texas Agencies are entitled to sovereign immunity, and Plaintiff fails to state a claim for which relief may be granted. *Id.* Plaintiff's Response is at ECF 57. The Texas Agencies did not file a reply.

(6)    Texas Attorney General Ken Paxton filed his Motion to Dismiss at ECF 79. He argues that the Court lacks personal jurisdiction, Plaintiff lacks standing, Plaintiff's claims against the Attorney General are barred by the Eleventh Amendment and qualified immunity, and Plaintiff fails to state a claim for which relief may be granted. *Id.* Plaintiff responded at ECF 81, and Mr. Paxton replied at ECF 82.

## **BACKGROUND**

For purposes of this ruling, this Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in his Complaint [ECF 1].[1] The Court construes the well-pleaded allegations in the light most favorable to him. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *see also Boulter v. Noble Energy*, 521 F. Supp. 3d 1077, 1082 (D. Colo. 2021) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

---

[1] Although Plaintiff has filed several entries onto the case docket sheet that he labels as a "complaint," the original complaint at ECF 1 remains the operative pleading. Plaintiff has not moved to amend his complaint. Moreover, as Defendant IFIC notes in its Motion to Dismiss [ECF 95 at p. 2], Plaintiff confirmed at the March 4, 2025 Status Conference that he is proceeding on the basis of his Complaint at ECF 1.

"Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir.2010). There are limited exceptions to this general rule by which a court may consider materials beyond the four corners of the complaint. *Id.* The first such exception concerns "(1) documents that the complaint incorporates by reference [and] (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* A court may consider such documents when considering a motion to dismiss. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (permitting a court to take judicial notice of facts that are a matter of public record); *see also N.E.L. v. Gildner*, 780 F. App'x 567, 571 (10th Cir. 2019); *Slavin v. USAA Cas. Ins. Co*., No. 14-CV-01839-LTB-CBS, 2015 WL 514936, at *2 (D. Colo. Feb. 6, 2015) (citing *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)).

Second, a court may take judicial notice of "documents contained in the public record." *Sweesy v. Sun Life Assur. Co. of Canada*, 643 F. App'x 785, 789 (10th Cir. 2016). This includes judicial notice of other courts' files and records as well as filings in related cases. *Mohamed v. Santisteven*, No. 21-cv-02676-NYW-MDB, 2023 WL 6376709, at *2 (D. Colo. Sept. 29, 2023). *See also, Smith v. U.S*., No. 19-cv-00842-RM, 2021 WL 1635841, at *1 (D. Colo. April 27, 2021) (noting how a federal court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") As such, this Court considers the rulings by the two previous courts that have considered this same grievance, transcripts of court proceedings in those cases,[2] and the Parties' filings in those prior

---

[2] For example, Plaintiff submits into the record at ECF 50 the transcript of the Scheduling Conference that the federal Texas court held on July 18, 2023. He submits into the record at ECF 49-1 the transcript of a hearing that the Texas state court held on May 16, 2022. Plaintiff submits

cases.

Third, this Court considers documents generated as part of Plaintiff's request for administrative relief. This Court may do so because they were referred to in the Complaint, they are central to Plaintiff's claims, and there is no dispute over their authenticity. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).

I.     **Plaintiff Complains About the Condition of His New Manufactured Home**

At the center of this lawsuit is a manufactured home that Plaintiff bought and which he alleges suffered from manufacturing defects and incurred transportation-related damage. Plaintiff's core grievance is that his manufactured home did not comply with HUD regulations. Plaintiff attaches to his Complaint numerous documents which list out these alleged defects and damages that are subject of his grievance. Plaintiff submits throughout the case record much more information about the purchase; his correspondence with the Defendants; the four inspections of the mobile home; and his pursuit of administrative relief and complaints made with the Defendants. For purposes of this section regarding the fact background prior to Plaintiff's first lawsuit, this Court limits the discussion to what Plaintiff provides at ECF 1 with his Complaint.

Hamilton (the manufacturer) built the manufactured home in Alabama, and the manufactured home was transported from there to Wright (the retailer) in Vidor, Texas. ECF 1 at p. 71. Plaintiff bought[3] the manufactured home in June 2019 from Wright, and it was installed at

_____

with his Complaint part of that same transcript. ECF 1 at pp. 50-53.

[3] This Court also takes judicial notice of the State of Texas title record that was issued on

Plaintiff's property in the town of Orange, Texas. *Id*. at pp. 45, 71. Summit transported the

manufactured home from the retailer to Plaintiff's property. *Id*. at p. 73. The delivery receipt[4]

noted various forms of damage. *Id*. at p. 71. Robert's did the installation work. *Id*. at p. 74.

In October 2019, Plaintiff filed a consumer complaint with the TDHCA. *Id*. at p. 37. On

December 5, 2019, TDHCA wrote Hamilton (the manufacturer), Wright (the retailer), and

Robert's (the installer) to inform them of Plaintiff's complaint and the assignment of an

inspector. *Id*. at pp. 40-43. The manufactured home was inspected on December 17, 2019. *Id*. at

p. 71. TDHCA issued its Consumer Complaint Final Report on December 20, 2019. That report

addressed all observed or complained-of defects. It identified those warranty defects for which

Hamilton and Wright were responsible. It also identified those defects that TDHCA regarded as

cosmetic and not assignable. *Id*. at pp. 45-48. Another inspection occurred in January 2020. *Id*. at

p. 71. At the Scheduling Conference held by the federal Texas court on July 18, 2023, Plaintiff

conceded that some repairs were made. ECF 50-1 at p. 17.

## II.     HUD Regulatory Framework

Because Plaintiff's claims rest on allegations of regulatory non-compliance by

Defendants, this Court briefly summarizes that regulatory framework here.

The governing body of federal statutes are found at 42 U.S.C. §§ 5401-5426, and

collectively they are referred to as the National Manufactured Housing Construction and Safety

---

December 2, 2019 and which Plaintiff submits into the record at p. 2 of ECF 99-1. It shows that
ownership was transferred from Wright (in Vidor, Texas) to Plaintiff, and that the manufactured
home is located in the town of Orange, Texas, in Newton County. Curiously, this record shows
that the manufactured home was built in July 2019 but that Plaintiff bought it a month earlier, in
June 2019.

[4] Plaintiff submits the delivery receipt into the record at ECF 56-1.

Standards Act of 1974 (the "Act"). The Act has numerous purposes, including ensuring "uniform and effective enforcement of Federal construction and safety standards for manufactured homes." 42 U.S.C. § 5401. The U.S. Department of Housing and Urban Development ("HUD") is the federal agency that promulgates the regulations under the Act. Those regulations, consisting of the Manufactured Home Construction and Safety Standards, are found at 24 C.F.R. Part 3280.

TDHCA is the Texas state agency that has authority over this subject. As Hamilton explained it to the Texas federal court, TDHCA serves the role of HUD code "police" in Texas. ECF 50-3 at p.12. Federal law expressly authorizes state enforcement. 42 U.S.C. § 5422.

Hamilton explained the HUD regulations that govern the manufacturing process in the Texas federal court case. All aspects of design and manufacture are subject to HUD inspection. ECF 50-3 at p. 12. This step of the regulatory process ends when the manufacturer delivers the newly manufactured home to the retailer. At that point, the manufacturer must provide the retailer with a special label to certify that the product conforms to all applicable Federal construction and safety standards. 42 U.S.C. § 5415; 24 C.F.R. 3280.11.

The State of Texas, in turn, has its own body of law that governs HUD compliance in the context of manufactured homes. *See* Texas Occupational Code Chapter 1201. For example, Texas law considers a manufactured home to be "habitable only if:

    (1)    there is no defect or deterioration in or damage to the home that creates a dangerous condition;

    (2)    the plumbing, heating, and electrical systems are in safe working order;

    (3)    the walls, floor, and roof are:

        (A)    free from a substantial opening that was not designed; and

(B)    structurally sound; and

(4)    all exterior doors and windows are in place and operate properly."

Texas Occupational Code § 1201.453. Texas law also requires the manufacturer of a new

manufactured home to provide a one-year warranty that "the home is constructed or assembled in

accordance with all building codes, standards, requirements, and regulations prescribed by the

United States Department of Housing and Urban Development under the National Manufactured

Housing Construction and Safety Standards Act of 1974 (42 U.S.C. § 5401 *et seq*.)." Texas

Occupational Code § 1201.351. Texas law permits aggrieved consumers to pursue an

administrative appeal should they disagree with a TDHCA decision. Texas Occupational Code §

1201.406(c).

It is undisputed that Plaintiff did not pursue such an administrative appeal through the

TDHCA.

## III.    Plaintiff's First Lawsuit

Plaintiff filed suit on February 5, 2021 in Texas state court. *See Fragstein v. Wright's*

*Manufactured Homes, LLC, et al*., 21-cv-14806 (1st Judicial District, Newton County, Texas).

He brought his lawsuit against Hamilton, Wright, Summit, and Robert's, as well as against

TDHCA and the Texas Attorney General. He submits into the record at ECF 16-4 and ECF 16-5

the complaints filed in the Texas state case.

The record contains at ECF 49-1 the transcript of a hearing that the Texas state court held

on May 16, 2022. *See also*, ECF 1 at pp. 50-53. That transcript shows the positions of the various

Defendants and the Court in that case:

1)      Hamilton complained that while Plaintiff had attended a mediation, the undertaking was "frustrating" (implying there was no meaningful or substantive compliance with the mediation requirement). Hamilton asked that the lawsuit be dismissed to leave the Parties free to pursue arbitration.

2)  The state court explained to Plaintiff why arbitration was required: Plaintiff was in a business dispute with his home's manufacturer and retailer; he had a contract with them; those contracts required arbitration; and arbitration was the dispute resolution forum.[5]

3)  TDHCA argued that Plaintiff's lawsuit against it suffered from many defects. First, TDHCA asserted its sovereign immunity. Plaintiff indeed conceded the state's immunity. TDHCA also complained that Plaintiff never pursued an administrative appeal and that Plaintiff simply cites a lot of regulatory code without identifying what specific federal law or regulation that it violated and how. The state court eventually dismissed TDHCA on the basis of immunity, and it advised Plaintiff that if he believed TDHCA was not fulfilling its obligations, then his only option is to file an administrative complaint with state government. Plaintiff may not sue TDHCA in court as a way to hold it accountable for shortcomings in how it inspected and approved his manufactured home, the court explained.

The Texas state court rendered its Final Order of Dismissal with Prejudice on June 6, 2022. ECF 42-1. The court found that Plaintiff had failed to comply with its orders regarding mediation and arbitration. The court also imposed costs against Plaintiff. The court informed Plaintiff that its dismissal order "is intended to be a final Order for this case, disposing of all

---

[5] <u>There is no indication in the record that Plaintiff pursued arbitration at any point</u>. At a Scheduling Conference held in his Texas <u>federal</u> court case, Plaintiff explained that he did not know how to set up an arbitration. ECF 50-2 at p. 17.

parties and issues, and is appealable." ECF 42-1 at 1.

It is undisputed that Plaintiff did not appeal that dismissal order. According to Defendant IFIC, Plaintiff confirmed at this Court's Status Conference on March 4, 2025 that he did not appeal. ECF 95 at p. 2.

**IV.    Plaintiff Files Claims Against Surety Bonds**

In the present case, Plaintiff asserts several claims that concern the release of surety bonds. Claim Eight is titled as "Insura[n]ce Code." Plaintiff references the consumer complaint that he filed with the Texas Department of Insurance on February 9, 2024. ECF 1 at pp. 68-76. The subject of that consumer complaint was his request to release the surety bonds that the TDHCA had on file for Hamilton, Wright, and Robert's. *Id*. at p. 71.

As the Texas Department of Insurance explained in its letter to Plaintiff dated April 24, 2024 (which Plaintiff attaches to his Complaint at p. 75 of ECF 1): Defendant Western Surety sold Wright its surety bond; Defendant Travelers sold Hamilton its surety bond; and Defendant IFIC sold Robert's its surety bond. The Texas Department of Insurance denied Plaintiff's claims against those surety bonds. It explained that "each of these bonds requires TDHCA to find a violation before payments can be made. In this case, TDHCA has determined that no violations exist."

Plaintiff also directly requested each insurer to pay him the bonds. These requests are the subject of Claims Nine, Ten, and Eleven of Plaintiff's Complaint. ECF 1 at pp. 77-84.

Travelers denied Plaintiff's request. Plaintiff attaches to his Complaint an email from Travelers affirming its denial decision of October 6, 2022. *Id*. at p. 80. Travelers reported that its review of the records showed that Plaintiff's manufactured home was inspected on numerous

occasions in response to his complaints to the TDHCA. TDHCA found no violations of the law,

and Plaintiff did not administratively appeal TDHCA's determination. As a result, no bond

payment was made. *Id*.

Western Surety denied Plaintiff's request for Wright's surety bond for the same reason:

there was no determination by TDHCA of non-compliance with the applicable law. *Id*. at p. 84.

IFIC denied Plaintiff's request for payment on Robert's surety bond, *id*. at p. 82,

however, Plaintiff does not attach IFIC's explanation to his Complaint.

## V.    Plaintiff's Second Lawsuit

Plaintiff filed suit in the federal court of the Eastern District of Texas on April 19, 2023.

*See Fragstein v. Hamilton Homebuilders LLC*, *et al*., 23-cv-76-MJT-DLS (E.D. Texas). Plaintiff

brought suit against Hamilton, Wright, Summit, and TDHCA. Those defendants made

appearances in that lawsuit. Plaintiff also brought suit against Robert's, the federal HUD agency,

and the attorney who represented him for his Texas state court case. Those three defendants did

not appear. ECF 50-1 at pp. 1-5.

Similar to the present lawsuit, Plaintiff alleged violations of various federal regulations

regarding manufactured homes as well as a violation of the Texas Deceptive Trade Practices Act.

He also brought claims for breach of contract and breach of warranties. He demanded $50

million in damages. *Fragstein v. Hamilton Homebuilders LLC, et al*., No. 23-CV-76-MJT-CLS,

2023 WL 6635080, at *1, 5 (E.D. Texas Sept. 18, 2023).

The Texas federal court held a Scheduling Conference on July 18, 2023, the transcript of

which is found as attachments to ECF 50. The primary legal issue was res judicata, and U.S.

Magistrate Judge Christine L. Stetson who conducted that Scheduling Conference discussed that

doctrine in depth with Plaintiff. She summarized Defendants' position as: "there is no difference between the issues that you all litigated in state court and the issues that you want to litigate before me." ECF 50-2 at p. 14. Another issue concerned sovereign immunity which TDHCA was asserting. ECF 50-3 at pp. 3-4. Hamilton argued the lack of federal subject matter jurisdiction, arguing that the federal HUD regulations did not provide Plaintiff with a private cause of action. ECF 50-3 at pp. 5-9.

Magistrate Judge Stetson explained the need to consider the threshold, jurisdictional arguments that Defendants raised in their motions to dismiss, before the court could turn to the merits of Plaintiff's claims about his home. ECF 50-2 at p. 17. She explained that federal courts have limited jurisdiction. ECF 50-3 at p. 9.

After ruling on the motions to dismiss, Magistrate Judge Stetson anticipated that arbitration would be the next issue for the court to address. ECF 50-3 at p. 14. She explained that that Texas state court did not reach the merits of his claims because it found Plaintiff had failed to pursue those claims in arbitration. If Plaintiff disagreed with the need to arbitrate, then that was a disagreement he had with the Texas state court's ruling. Because Plaintiff did not appeal, the Texas state court's ruling now was fixed in place. ECF 50-2 at pp. 15-16.

Magistrate Judge Stetson issued her ruling on the defendants' motions for summary judgment[6] and motions to dismiss by way of a report and recommendation. *See Fragstein*, 2023 WL 6635080. She found that Plaintiff did not plead how the federal court had jurisdiction on the basis of citizenship diversity or on the basis of federal question (because the federal laws that

---

[6] At a status conference held on July 18, 2023, Magistrate Judge Stetson advised the parties that the Court intended to convert three motions to dismiss to motions for summary judgment. 2023 WL 6635080, at *1.

governed manufactured homes did not provide him with a private cause of action). *Id.* at *5. She recommended that the federal court decline to exercise its supplemental jurisdiction over Plaintiff's state law claims. *Id.* at *6. Lacking any basis to exercise jurisdiction over his claims, she recommended that his claims be dismissed without prejudice. *Id.* United States District Judge Michael J. Truncale agreed and adopted the recommendation. District Judge Truncale summarized that "[w]ithout subject matter jurisdiction to hear Plaintiff's claims, the Court cannot offer any further findings . . . [and] it cannot address the merits-based arguments raised in Plaintiff's objections." *Fragstein v. Hamilton Homebuilders LLC, et al*., No. 23-CV-76-MJT-CLS, 2023 WL 6578466, at *2 (E.D. Texas Sept. 18, 2023). District Judge Truncale therefore dismissed his claims without prejudice; entered a final judgment of dismissal; and closed the case. *Id.* at *2. *See also*, ECF 1 at p. 55.

Plaintiff appealed and the Fifth Circuit dismissed the appeal. *Fragstein v. Hamilton Homebuilders LLC, et al*., No. 23-40610, 2023 WL 11156605 (5th Cir. Nov. 7, 2023).

## VI.    Plaintiff's Third Lawsuit

The third lawsuit about Plaintiff's manufactured home is the instant one before this Court. Plaintiff commenced this lawsuit on September 23, 2024. The Complaint, with attachments, is 95 pages in length. It lists 13 Defendants but includes the information of multiple other individuals, including the names of attorneys that represented the Defendants in the prior litigation.[7] ECF 1 at pp. 1-5.

---

[7] The Court uses Plaintiff's initial list of Defendants as the operative one. ECF 1 at pp. 1-2.

Plaintiff's Complaint lists 12 claims:[8]

1) 24 C.R.F. [sic] 3282.606 Consumer Information,

2) Part 3280 – Manufactured Home Construction & Safety Standards

3) False Indication by Ebony Harvey

4) 42 U.S. Code 5420 – Failure to report violations; penalties

5) Rule 603

6) Dismissed without Prejudice

7) 24 C.F.R. 3282.308 State participation in monitoring of primary inspection

8) Insurace [sic] Code

9) Fourteenth Amendment Equal Protection and Other Rights

10) Fourteenth Amendment Equal Protection and Other Rights

11) Fourteenth Amendment Equal Protection and Other Rights

12) State enforcement, and Fourteenth Amendment Equal Protection and Other Rights

ECF 1. Each claim contains a subject heading but provides little to no factual support. *See, e.g.*,

Claim One at p. 19. Plaintiff attaches a document or documents to each claim, with only minimal

reference to the documents' significance to the respective claims. *Id.* Plaintiff seeks $100 million

in damages. ECF 1 at p. 92.

As his filings in this case show, Plaintiff's claims boil down to three main grievances.

First, he contends that his manufactured home was delivered and installed with manufacturing

defects and transportation-related damage. These defects and damage rendered his home HUD

---

[8] In the jurisdictional section, ECF 1 at pp. 6-18, Plaintiff lists other statutes that do not make it
into Plaintiff's Statement of Claims.

non-compliant. Implicit in his arguments is that his home remains HUD non-compliant despite the repair work.

Second, Plaintiff argues that his manufactured home is "unhabitable" in the technical sense of regulatory or procedural non-compliance. This theory stems from his arguments about defects with and shortcomings in the paperwork.

Third, Plaintiff complains that the private business Defendants (the manufacturer, retailer, transporter, and installer) are not complying with HUD requirements generally. Moreover, Texas state government is not enforcing HUD requirements against them or protecting consumers. In this sense, Plaintiff is not seeking redress for damages that he personally suffered but rather he seeks enforcement of HUD regulations.

Plaintiff expresses his above grievances in the form of a constitutional claim. Plaintiff alleges that the Defendants deprived him of equal protection or due process in a way that violated his Fourteenth Amendment rights. This Court therefore construes this lawsuit to be brought under 42 U.S.C. § 1983. Confirming this, Plaintiff alleges that the jurisdiction in the present arises from federal questions, not from diversity of citizenship. ECF 1 at pp. 6-18.

## LEGAL STANDARDS

### I.    Fed. R. Civ. P. 12(b)(2)—Lack of Personal Jurisdiction

A plaintiff must demonstrate how the District of Colorado has personal jurisdiction over an out-of-state defendant. "Jurisdiction to resolve cases on the merits requires . . . authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999)). The burden of establishing personal jurisdiction is on the plaintiff.

*XMission, LC v. Fluent LLC*, 955 F.3d 833, 839 (10th Cir. 2020).

To overcome a personal jurisdiction challenge raised in a motion to dismiss, a plaintiff need only make a prima facie showing and "the plaintiff's burden is light." *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citing *Doe v. National Medical Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). A plaintiff does so by demonstrating via an affidavit or other written material that support the exercise of personal jurisdiction over the defendant. *Id. See also Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 900 (10th Cir. 2017). More specifically:

> The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true.

*Wenz*, 55 F.3d at 1505 (citations and internal quotation marks omitted). *See also Knerr v. Boulder BJ, LLC*, No. 19-cv-00799-JKL-MEH, 2020 WL 5126138, at *2 (D. Colo. Apr. 7, 2020) (permitting consideration of affidavits and evidence outside the complaint and accepting allegations as true to the extent they are uncontroverted by the evidence). The Court should resolve all factual disputes in the plaintiff's favor. *AST Sports Science, Inc. v. CLF Distribution, Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

## II.    Fed. R. Civ. P. 12(b)(1)—Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint if the court lacks the subject matter jurisdiction to hear it. "Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter." *Walker v. Knapic*, No. 20-cv-02179-RBJ-MEH, 2021 WL 4311821, at

*1 (D. Colo. Aug. 30, 2021) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "[F]ederal courts are duty bound to examine facts and law in every lawsuit before them to ensure that they possess subject matter jurisdiction." *Wilderness Soc. v. Kane Cnty.*, 632 F.3d 1162, 1179 n.3 (10th Cir. 2011) (Gorsuch, J., concurring). A court lacking jurisdiction must dismiss a case when it "becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).

There are two different ways in which a Rule 12(b)(1) challenge may be pursued: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject-matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject-matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the [] complaint to be true." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). A defendant makes a "facial attack" on subject matter jurisdiction when it argues that the complaint, itself, assuming its allegations to be true, does not state a jurisdictional basis. By comparison, a defendant makes a "factual attack" when it disputes the truth of the allegations upon which a plaintiff bases jurisdiction. The defendant may challenge a complaint's otherwise formally sufficient jurisdictional allegations with affidavits or other evidence. For such a factual attack, the court does not presume the complaint's truthfulness but rather "must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist." *Teodosio v. DaVita, Inc*., 684 F.Supp.3d 1117, 1121-22 (D. Colo. 2023). A court has

"wide discretion" in deciding what to consider when resolving a factual attack. *Grace Bible Fellowship v. Polis*, No. 23-1148, 2024 WL 1340201, at *2 (10th Cir. 2024).

## III.    Fed. R. Civ. P. 12(b)(6)—Failure to State a Claim

The purpose of Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that a plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. *Twombly* requires a two-prong analysis. First, a court must exclude from consideration "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–80. Second, a court should focus on the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then that claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn*

*Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). While the Rule 12(b)(6) standard does not require a plaintiff to establish a prima facie case in a complaint, the elements of each cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement." *Frey v. Town of Jackson, Wy.*, 41 F.4th 1223, 1232-33 (10th Cir. 2022). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case." *Frey*, 41 F.4th at 1233. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## IV.    Treatment of a Pro Se Plaintiff's Complaint

A pro se plaintiff's "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991)). "Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Smith*, 561 F.3d at 1096 (quoting *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean that if a court "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, [it] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) (quoting *Hall*, 935 F.2d at 1110).

Nevertheless, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Garrett*, 425 F.3d at 840 (quoting *Hall*, 935 F.2d at 1110). Nor is it the Court's obligation to do litigants' legal research for them. *We Alliance Secured Income Fund, LLC v. Swan*, No. 23-cv-02992-SKC-MEH, 2024 WL 2863805, at *2 (D. Colo. Mar. 25, 2024).

## DISCUSSION

Before this Court can reach the merits of Plaintiff's grievance, it must determine whether it can exercise personal jurisdiction over the Defendants and whether it has the subject matter jurisdiction to hear Plaintiff's grievance.

## I.    Personal Jurisdiction

The Parties initially disputed whether this Court can exercise personal jurisdiction over the Defendants, and the briefing of the Motions to Dismiss contains substantive arguments on this issue. Thereafter, with his Motion to Change Venue [ECF 173], Plaintiff expressed his agreement with the Defendants that "this Court has no personal jurisdiction" over them. Plaintiff's concession resolves this matter. This Court adds that Plaintiff's concession is consistent with what the law

would have directed. This Court therefore finds that it lacks personal jurisdiction over the Defendants.

That finding, along with Plaintiff's request to change venue to "The United States District Court in Texas," raises the question of whether the lack of personal jurisdiction warrants transfer of this matter to another court, *see Active Athletics, LLC v. Active Gymnastics Center, LLC*, No. 24-cv-00366-STV, 2024 WL 5187564, at *8 (D. Colo. Dec. 20, 2024) (discussing the factors for deciding whether the interests of justice favor a transfer) or dismissal without prejudice, *see Rasmussen v. Burnett*, No. 24-cv-01727-SKC-KAS, 2025 WL 605250, at *6 (D. Colo. Feb. 25, 2025) (citing *Shrader v. Biddinger*, 633 F.3d 1235, 1250 (10th Cir. 2011) in support of the proposition that dismissal for lack of personal jurisdiction should be without prejudice). The Court provides a recommendation on that issue below. To the extent they may relate to the transfer option, this Court considers Defendants' additional arguments for dismissal.

## II.    Subject Matter Jurisdiction

Plaintiff must demonstrate how this Court can exercise jurisdiction over the subject matter of his grievance. Federal courts are courts with limited jurisdiction, as both Magistrate Judge Stetson, ECF 50-3 at p. 9, and District Judge Truncale, ECF 42-2 at p. 3, already explained to Plaintiff. If Plaintiff has no cause of action under federal law, then he is unable to invoke this Court's federal subject matter jurisdiction. *See Fragstein*, 2023 WL 66350580 at *6. *See also, Perer v. McCollum*, No. 22-cv-03092-RMR-MEH, 2022 WL 17404257, at *3 (D. Colo. Dec. 2, 2022) (noting how a "question of federal law" is needed "to invoke this Court's subject matter jurisdiction.")

A.      **HUD Provides No Private Cause of Action**

The emphasis of Plaintiff's grievance is that his manufactured home did not (and after the

repairs still does not) comply with HUD regulations. However, as Magistrate Judge Stetson already

found, *see Fragstein*, 2023 WL 66350580 at *5, the HUD federal statutory and regulatory scheme

does not provide him a private cause of action. Rather, as Plaintiff himself indicates through his

citation to 42 U.S.C. § 5422, the federal statutory scheme gives enforcement authority to the states

(not to private consumers).

Plaintiff cites to various statutes and regulations that comprise the federal HUD regulatory

scheme that governs manufactured homes. It is true that manufactured homes are a subject of

federal regulation. However, the federal HUD regulatory scheme does not give Plaintiff a cause of

action in federal court. Plaintiff cites no law that allows him to sue the Defendants under the federal

HUD regulatory scheme.

Consequently, this Court finds that the federal HUD regulatory scheme does not provide

Plaintiff with either a claim for relief or a basis for subject matter jurisdiction.

B.      **No Private Enforcement of the HUD Regulatory Scheme**

Similarly, Plaintiff provides no legal authority to show how he may sue the Texas State

Defendants for any alleged non-fulfillment of their regulatory or law enforcement responsibilities.

In a related context, a plaintiff may not bring a civil lawsuit to compel a defendant to enforce a

criminal statute. *See Kaplan v. Archer*, No. 11-cv-02094-PAB-CBS, 2012 WL 3277170, at *16

(D. Colo. July 3, 2012). *See also Hickenlooper*, 859 F.3d at 904 (noting how a private citizen has

no cognizable interest in the proper administration of the laws or the prosecution of another private

citizen). Similarly, Plaintiff does not demonstrate how he may compel a state's executive branch

to enforce a regulatory rule. Such a request likely would fail due to a lack of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) ("when a plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but is ordinarily 'substantially more difficult' to establish.") (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

In short, this Court finds no private cause of action for the private enforcement of state or federal HUD law.

### C.    Fourteenth Amendment

The only potentially cognizable federal law question that Plaintiff appears to assert is an alleged violation of his Fourteenth Amendment equal protection right,[9] which the Court liberally construes as a constitutional violation under 42 U.S.C. § 1983. However, as this Court finds in Section III below, Plaintiff does not plead a plausible § 1983 claim and the defects are such that the claim should be dismissed with prejudice and without leave to amend. Doing so means that Plaintiff loses his only basis for federal subject matter jurisdiction.

### D.    Summary

Other than the potential of a Fourteenth Amendment claim under 42 U.S.C. § 1983, Plaintiff states no basis by which this Court enjoys subject matter jurisdiction over his Complaint. To the extent these non-§ 1983 claims should be dismissed for lack of subject matter jurisdiction, the dismissal should be without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (first citing *Albert v. Smith Food & Drug Ctrs., Inc*., 356 F.3d 1242, 1249 (10th Cir. 2004); and then citing *Martinez v. Richardson*, 472 F.2d 1121, 1126 (10th Cir. 1973) (additional citations omitted)).

---

[9] *See* ECF 1 at pp. 10-14; pp. 16-18.

III.    **Failure to State a Claim**

Based on the above findings, the only way this Court could have subject matter jurisdiction is if Plaintiff asserts a viable § 1983 claim. He does not do so.

A.    **No Plausible Fourteenth Amendment Claim**

Plaintiff makes only a conclusory assertion of a Fourteenth Amendment "Equal Protection" claim, *see* ECF 1 at pp. 10-14; pp. 16-18, and at times in his filings he also alleges a due process violation, *see, e.g.*, ECF 57 at p. 4 and ECF 81 at p. 5. He does not explain how the facts show a violation of any Fourteenth Amendment right, whether as a matter of equal protection or due process. Several Defendants address the elements of a Fourteenth Amendment claim in their Motions to Dismiss. *See e.g.,* ECF 63 (IFIC), ECF 70 (Travelers). Although Plaintiff leaves this theory of wrongdoing wholly undeveloped, the Court will liberally construe his complaint as seeking to raise a claim under § 1983 that his Fourteenth Amendment rights were violated.

1.    **Statute of Limitations**

First, this Court finds that any claim brought by Plaintiff under § 1983 is barred by the statute of limitations. *See Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (noting that a plaintiff has two years to bring such a claim). Plaintiff asserts without any supporting legal authority that "[i]n Colorado federal court, a consumer can file a lawsuit after five years if [TDHCA] does not enforce the Federal [governing manufactured home Act]. ECF 99 at ¶ 4. Rather, this Court finds Defendants' arguments (*see* ECF 43 at pp. 9-10, ECF 70 at p. 16, ECF 79 at p. 9, and ECF 63 at p. 12) more persuasive. Plaintiff first became aware of the HUD non-compliance in October 2019 as indicated by the consumer complaint he had filed that month. ECF 1 at p. 37. He pursued that grievance in different ways including his first lawsuit in Texas state

court. The Texas state court case concluded on June 6, 2022. ECF 42-1. Even if this Court gives Plaintiff the benefit of the doubt and finds that his claim accrued on June 6, 2022, the filing of this civil action in the District of Colorado on September 23, 2024, occurred more than two years later.

### 2.    Non-Liable Defendants

Additionally, Plaintiff may not bring a § 1983 claim against the private Business and Insurance Defendants. Because a cause of action under § 1983 is limited to state actors, *see Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006), *VDARE Foundation v. City of Colorado Springs*, 449 F.Supp.3d 1032, 1040-41 (D. Colo. 2020), these Defendants who are private entities may not be held liable under it.

Regarding the Texas State Defendants, Plaintiff argues that they violated the Fourteenth Amendment because they did not enforce either Texas or federal law that governs manufactured homes. ECF 81. By not enforcing the law, Plaintiff argues, they did not follow the law. ECF 57. A plaintiff may bring a § 1983 claim against a state actor, and in this context, a state actor means an individual person who acted on behalf of a state or state agency under the color of state law. However, to sue the state itself, (such as a state agency or an individual in his or her official capacity) for monetary damages in a federal court, plaintiff must overcome the state's Eleventh Amendment immunity. *See Griffin v. Hickenlooper*, No. 11-cv-03380-REB-BNB, 2013 WL 1130439, at *2 (D. Colo. Jan. 4, 2013). Title 42 U.S.C. § 1983 does not waive a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

"The Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state." *Wagoner Cty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009) (citing *Steadfast Ins. Co. v. Agric. Ins.*

*Co.*, 507 F.3d 1250, 1252-53 (10th Cir. 2007)). "An official capacity claim against a government officer is really a claim against the government that employs that officer." *Strepka v. Miller*, 28 Fed. App'x. 823, 828 (10th Cir. 2001) (citing *Myers v. Okla. County Bd. of County Com'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). If applicable, this immunity "deprives federal courts of subject-matter jurisdiction." *Runkle v. Colorado*, No. 22-cv-03252-WJM-SBP, 2023 WL 9799116, *6 (D. Colo. Aug. 29, 2023) (quoting *Wood v. Milyard*, 414 F. App's 103, 105 (10th Cir. 2011) (quotation marks omitted)). The prohibition does not apply "if the state waives its sovereign immunity," *Strepka*, 28 Fed. App'x. at 828, or if the plaintiff seeks "prospective relief for an ongoing violation of federal law." *Runkle*, 2023 WL 9799116, at *7 (quoting *Davis v. California*, 734 F. App'x 560, 563 n. 7 (10th Cir. 2018) (referencing the "*Ex parte Young* exception") (quotation marks omitted)).  Neither exception applies here.

TDHCA asserted its sovereign immunity defense at the Texas state court hearing on May 16, 2022. Plaintiff conceded at that time his inability to sue the State of Texas, and the Texas state court dismissed TDHCA on the basis of sovereign immunity. ECF 49-1 at pp. 5-9. That applies with equal force here. In short, Plaintiff as a private citizen may not sue a state (here, the State of Texas, its agencies, or its officers in their official capacity) in federal court. *See Runkle*, 2023 WL 9799116, at *6 (gathering cases).

### 3.    Summary

Plaintiff's § 1983 claim suffers from numerous, fatal defects.  The Texas State Defendants have immunity and Plaintiff may not bring the claim against the remaining Defendants because they are private entities. Additionally, the claim is time-barred. As a result, Plaintiff fails to state a plausible Fourteenth Amendment claim under 42 U.S.C. § 1983.

**B.      Res Judicata**

Plaintiff seeks this forum to litigate his claims *de novo* as if the Texas state court (and Texas

federal court) cases did not happen at all. Indeed, as this Court addresses below, Plaintiff argues

that the prior two courts' final orders are void. However, this Court cannot act as an appellate court

for the Texas state court or the Eastern District of Texas.[10]

**1.      General Rule**

To the extent Defendants base their res judicata defense on a <u>state</u> court decision, then that

state's law about what constitutes res judicata or other preclusive effect by prior court decisions

controls. *Charles Schwab & Co., Inc. v. Highwater*, No. 17-cv-00803-CMA-NYW, 2017 WL

3503353 at *2 (D. Colo. Aug. 16, 2017) (citing *Salguero v. City of Clovis*, 366 F.3d 1168, 1173

(10th Cir. 2004)). Under Texas law, res judicata is an affirmative defense that a defendant

establishes by proving:

(1)      a prior final determination on the merits by a court of competent jurisdiction,

(2)      identity of parties or those in privity with them, and

(3)      the second action is based on the same claims as were or could have been raised in
the first action.

*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Texas 2010). Under this definition, the first

lawsuit precludes the parties (and those in privity with them) from subsequently litigating "matters

actually litigated and on causes of action or defenses arising out of the same subject matter that

---

[10] To the extent Plaintiff is litigating the present lawsuit in a way that implicates the *Rooker-Feldman* abstention doctrine, dismissal of his Complaint is warranted pursuant to Fed. R. Civ. P. 12(b)(1) without prejudice for lack of federal subject matter jurisdiction. *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 953 F.3d 660, 668 n. 7 (10th Cir. 2020). This Court cannot review a state court judgment. *Id.*

might have been litigated in the first suit." *Id.*

To the extent the Texas <u>federal</u> court's rulings have a preclusive effect, it is governed by federal law. *Smith*, 2021 WL 1635841 at *10. The res judicata rubric under Tenth Circuit law includes the concepts of both <u>issue</u> preclusion (a party may not relitigate an issue after an adverse determination on that issue) and <u>claim</u> preclusion (a party may not litigate a legal claim that was or could have been the subject of the previous final judgment). *Id. See also*, *Poletto v. U.S.*, No. 23-cv-00613-PAB-NRN, 2023 WL 6904513, at *3-4 (D. Colo. Sept. 20, 2023) (explaining the concepts in detail).

### 2.    Preclusive Effect of the Texas State Court Litigation

The Texas state court dismissed Plaintiff's complaint with prejudice. Citing *Joachim*, 315 S.W.3d at 865-66, Defendant Hamilton argues that under Texas law, the Texas state court's "Final Order of Dismissal with Prejudice" has res judicata effect, and consequently it bars Plaintiff from relitigating here the claims that he raised there. ECF 42 at p. 4. On Hamilton's behalf, Defendant Travelers reiterates the res judicata argument. ECF 70 at p. 4. Defendant IFIC argues that Plaintiff's claims against its surety, Defendant Roberts, likewise are barred by res judicata. ECF 63 at p. 12. This Court examines the *Joachim* factors to determine whether the prior court's determination exerts a preclusive effect on this later litigation.

There can be no dispute that the first two *Joachim* factors are satisfied. The Texas state court, a court of competent jurisdiction, issued a final determination on the merits. The parties are largely the same.

As to the third *Joachim* element, Plaintiff already sued the Business Defendants about the defects with the manufactured home and about their failure to provide certain required

documentation, all of which he alleged violated HUD and state regulatory requirements. Based on those allegations, Plaintiff asserted claims of breach of contract, breach of warranty, and deceptive trade practices. ECF 16-4 at p. 1 and ECF 16-5 at pp. 1-5. Plaintiff restated those claims in a later amended petition filed in that case. ECF 16-4 at pp. 10-13. There, he also expressed his breach of contract claim in terms of his manufactured home's non-compliance with state and federal regulations. Here, in his third lawsuit, Plaintiff claims the violation of his Fourteenth Amendment rights. Even if Plaintiff did not assert that same particular cause of action in the Texas state court case—that is, a Fourteenth Amendment violation brought under 42 U.S.C. § 1983—it rests on the same underlying allegation that his manufactured home was HUD non-compliant. In other words, his present Fourteenth Amendment claim is "based on the same claims as were or could have been raised in the [Texas state court case]," *Joachim*'s third element. Plaintiff's present Fourteenth Amendment claim is another iteration of Plaintiff's "housing code violation claims." ECF 70 at p. 4.

Additionally, the Texas state court determined that Plaintiff's claims against Hamilton and Wright should be resolved in arbitration. In other words, the Texas state court decided <u>how</u> Plaintiff should resolve the dispute with Hamilton and Wright, compelling arbitration because contract documents from both of those Defendants contained arbitration agreements. ECF 49-1 at pp. 13-18. The Texas state court's ruling on the arbitrability of the dispute was on the merits of that legal issue, precluding Plaintiff from relitigating them in a new lawsuit. *See Mesner v. FMR, LLC*, No. 23-cv-00404-JAW, 2024 WL 1701549, at *4 (D. Maine Apr. 19, 2024). That arbitration determination remains binding on the Parties. If Plaintiff has a dispute with Defendant Hamilton or Wright about the manufactured home's condition and whether it was HUD compliant, the Texas

state court already has determined that arbitration is the proper forum to resolve that dispute. The principle of res judicata precludes Plaintiff from suing Hamilton and Wright about the manufactured home's condition in a subsequent lawsuit.

As a result, the elements of res judicata that *Joachim* sets out are met. Plaintiff brought suit in the Texas state court about the condition of his manufactured home and whether it was HUD compliant. Now in this lawsuit, Plaintiff sues the Defendants Hamilton and Wright (and the Insurance Defendants in privity with them[11]) in a court for a third time. This subsequent (third) lawsuit is based on "matters actually litigated and on causes of action or defenses arising out of the same subject matter that might have been litigated in the first suit," which *Joachim* instructs is now precluded.

### 3. No Preclusive Effect of the Texas Federal Court Litigation

The Texas federal court dismissed Plaintiff's complaint for lack of subject matter jurisdiction and thus dismissed his complaint without prejudice. As a general rule, res judicata does not attach to dismissals without prejudice (except for the issue of whether that court has jurisdiction). *Smith*, 2021 WL 1635841 at *11. This Court therefore finds that the Texas federal court does not exert a preclusive effect on this case.

### 4. Whether the Prior Courts' Rulings Are Void or Invalid

Plaintiff argues that the rulings of the Texas state court and Texas federal court both are void and invalid because neither judge placed witnesses under oath. As he summarizes this

---

[11] The insurance Defendants may not have been named as defendants in the prior two lawsuits, but they argue that as sureties, they are entitled to the same defenses as their principals who were party to those lawsuits. *See* ECF 63 at p. 11 and ECF 70 at p. 15 (both citing *Associacion de Azucareros de Guatemala v. U.S. Nat'l Bank of Or.*, 423 F.2d 638, 641 (9th Cir. 1970)).

particular argument at p. 2 of ECF 92: "Yes, we did have two cases in both hearings we were not

sworn in pursuant to Fed. Rule 603. Civil law as you should know. when a judge does not follow

the law, he/she then becomes a trespasser of law and he/she ruling is null and void. Which means

Plaintiff can file another lawsuit and court." *See also* ECF 49 at p. 2 (arguing that the order entered

by District Judge Truncale is void because that judge acted as a "trespasser of the law"); ECF 50

at p. 2 (making the same argument about Magistrate Judge Stetson); ECF 57 at p. 3 (arguing that

the Texas state and federal judges acted as trespassers of the law by not administering an oath

pursuant to Rule 603); ECF 81 at p. 2 (making the same argument about the Texas state court

hearing). Breaking this argument down, Plaintiff contends that Federal Rule of Evidence 603

required both judges (including the Texas state court judge) to place witnesses under oath. The

judges' non-compliance with that legal obligation[12] made them "trespassers of the law". Because

the judges "trespassed the law," Plaintiff concludes, the entire cases over which they presided are

void.[13]

    This Court disagrees that the two prior cases are void or invalid. First and foremost,

Plaintiff cites no legal authority to support his argument that the failure to comply with Fed. R.

Evid. 603 (assuming such an obligation even applied at those proceedings) renders any particular

order or the case on the whole void.

---

[12] Fed. R. Evid. 603 requires a federal court to give "a witness . . . an oath or affirmation to
testify truthfully" before that witness testifies "in a form designed to impress that duty on the
witness's conscience."

[13] Plaintiff raised this same argument with Magistrate Judge Stetson to oppose res judicata. ECF
50-2 at p. 9. Magistrate Judge Stetson nevertheless proceeded to explain Defendants' res judicata
argument to him in general terms and to advise him to respond to their res judicata argument. *Id.*
at pp. 9-20; ECF 50-3 at pp. 4, 13.

Nor is Plaintiff's argument otherwise meritorious. Neither hearing was an evidentiary hearing, trial, or other fact-finding undertaking. The Texas <u>state</u> court hearing entailed oral arguments on pending motions to dismiss. Defendant Hamilton refers to it as a non-evidentiary sanctions hearing. ECF 58 at p. 2. As for the Texas <u>federal</u> court case, Magistrate Judge Stetson expressly advised Plaintiff that she was "not going to place [him] under oath" even though she was giving him the opportunity "to explain to [her] from [his] perspective what [his] case is about." ECF 50-1 at p. 12. Magistrate Judge Stetson explained to him that the proceeding was a case management conference and a status conference. *Id.* "It is not an evidentiary hearing and I'm not taking testimony," she explained. ECF 50-1 at p. 12. *See also* ECF 50-3 at p. 11. Plaintiff did speak at the proceeding, but he did so in a pro se capacity. Since Plaintiff was the only non-lawyer to speak at these hearings, there can be no concern that the Court received unreliable information.

Plaintiff does not explain how unsworn testimony resulted in an adverse decision or caused him to lose those lawsuits. If Plaintiff is correct that the judges' actions were void and invalid or otherwise failed to comply with the law to his detriment, then he should have appealed both cases on that basis to the appropriate appellate court. He did not appeal the Texas state court decision at all, and although the record suggests that he did appeal the Texas federal court decision to the Fifth Circuit, the appeal failed. As IFIC explains, only jurisdictional defects render an order <u>void</u>. Any other errors (such as the ones alleged by Plaintiff here) make an order <u>voidable</u>. But such an error must be pursued on <u>direct</u> appeal (rather than attack it collaterally as he does here). Otherwise, judgments are presumed valid. ECF 95 at pp. 3-4.

**5.      Summary**

The Texas state court's ruling precludes Plaintiff from using this civil action to challenge whether his manufactured home is HUD compliant (for which the manufacturer, Defendant Hamilton, and the retailer, Defendant Wright, potentially could be responsible). Res judicata (whether in the form of issue or claim preclusion) applies to Plaintiff's § 1983 Fourteenth Amendment claim because it rests on the premise of HUD non-compliance and because arbitration was determined to be the proper dispute resolution forum.

**C.      Summary**

Title 42 U.S.C. § 1983 generally provides a cause of action by which to bring a Fourteenth Amendment claim. However, Plaintiff fails to plead how the facts meet the elements by which the law defines a violation of either his equal protection or due process rights. Plaintiff goes no further than to simply cite the Fourteenth Amendment. [14] Nor does Plaintiff address the other legal defects that prevent him from pursuing it. This Court therefore recommends that Plaintiff's § 1983 claim be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Moreover, for the reasons this Court gives below, this Court recommends that this claim be dismissed with prejudice and without leave to amend.

**IV.     Leave to Amend**

Dismissal of a case is a harsh remedy, and as a general rule, a litigant should have the opportunity to amend the complaint and cure pleading defects. *Hall v. Bellman*, 935 F.2d 1106, 1109–10 (10th Cir. 1991); *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). However, a court may dismiss a complaint without an opportunity to amend if "it is patently obvious that

---

[14] Yet another basis to dismiss could be on Plaintiff's failure to follow Fed. R. Civ. P. 8(a).

plaintiff could not prevail on the facts alleged and allowing him an opportunity to amend his complaint would be futile." *Curly v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110). The Court finds dismissal is appropriate on jurisdictional grounds, and indeed, there are a wide variety of defects with this lawsuit. This Court does not believe that Plaintiff can correct these defects by amending his Complaint.

This is not the first time Plaintiff has brought a lawsuit for this grievance. Magistrate Judge Stetson discussed in depth with Plaintiff the several defects with his attempt to sue many of these same Defendants over whether his manufactured home is HUD compliant. That discussion included many of the legal barriers to Plaintiff's claims that are discussed herein: res judicata; the Texas state court's arbitration order; and subject matter jurisdiction defects. Also discussed was the issue of whether the failure to swear in witnesses renders the courts' actions void. Even if the Texas federal court's dismissal has no res judicata effect here, that litigation nonetheless put Plaintiff on clear notice of the same issues that he would face here in the District of Colorado. Plaintiff brings this lawsuit despite the benefit of what was learned in that prior state and federal litigation.

Indeed, Plaintiff's present Complaint is wholly conclusory. It contains nothing that even would suggest a plausible, cognizable claim for relief. Despite the benefit of the prior two court's rulings, the Complaint he filed here is substantially more deficient than the one he filed with the Texas federal court. The present iteration of his complaint suggests no effort to comply with the pleading requirements laid out in the Federal Rules. Rather, Plaintiff's approach with the instant lawsuit is to file extensive documentation[15] and leave it to this Court to discern from that

---

[15] Not only does Plaintiff file a large quantity of documents into the record, but he repeatedly

documentation what his grievance and claims for relief are.

Plaintiff's failure to successfully address these legal issues now in this lawsuit despite that prior experience supports dismissing his Complaint without leave to amend. It would be futile to give Plaintiff leave to replead claims for which this lawsuit already is their third iteration. Moreover, as stated above, there are multiple, additional defects that render it futile to allow him to leave to replead his § 1983 claim.

## V.    Non-Appearing Defendants

As this Court discusses in its Order at ECF 153, not all Defendants have appeared in this case. The four Defendants who have <u>not</u> appeared are: Summit Housing Transport, Robert's Mobile Home Service, the Texas Governor, and the Texas Secretary of State. This Court recommends that the Plaintiff's Complaint be dismissed as to them as well. The position of these Defendants do not materially differ from that of the moving Defendants,[16] and the arguments that the moving Defendants make for dismissal apply with equal force to the non-appearing Defendants. It would be futile to allow this lawsuit to remain open as to them. Even if Plaintiff could demonstrate service of process on them that complies with Fed. R. Civ. P. 4, which he has not done to-date, the same defects that warrant dismissal of the moving Defendants would preclude the entry of default judgment against the non-appearing Defendants.

---

submits the same documentation into the record.

[16] For example, as conceded by Plaintiff generally: "[t]his Court has no personal jurisdiction." ECF 173 at p. 2.

**CONCLUSION**

The Motions to Dismiss persuasively lay out many defects that prevent this Court from proceeding with this lawsuit. To start, Plaintiff concedes that the Court has no personal jurisdiction over the Defendants. Additionally, the Court has no subject matter jurisdiction over his Compliant after dismissing his § 1983 claim with prejudice. The Complaint fails to state any valid claim, and any such claim is likely barred by either the statute of limitations or res judicata (or both).

Accordingly, the Court respectfully recommends[2] that the Motions to Dismiss [ECF 42, 43, 63, 70, 79 & 98] be **granted**.

This Court recommends that Plaintiff's § 1983 claim be dismissed with prejudice and without leave to amend. As a result, this Court lacks federal subject matter jurisdiction.

Without federal subject matter jurisdiction and without personal jurisdiction over the Defendants, Plaintiff's Complaint should be dismissed without leave to amend. This ruling should apply to all Defendants. Thus, Plaintiff's Complaint should be dismissed in its entirety, and that this case should be **closed**.

---

[2] Be advised that all parties shall have **fourteen (14) days** after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).

This Court recommends that Plaintiff's Motion to Compel Discovery [ECF 154], Motion to Enter into the Record [ECF 160], Motion to Amend Document ECF 160 [ECF 161], Motion to Amend Document 160 and 161 [ECF 162], and Permission from the Court to Enter New Evidence [ECF 170] be **denied as moot**. This Court adds that these Motions do not affect the recommended ruling on the Motions to Dismiss.

In addition to sending him the Notice of Electronic Filing, the Clerk of Court shall mail a copy of this Recommendation to Plaintiff at his mailing address of record and enter onto the case docket sheet a certification of that mailing.

DATED at Denver, Colorado, this 18th day of July, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge